UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SETH A. VILCHUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01190-JPH-TAB |
| | ) | |
| TRENT ALLEN Warden, | ) | |
| LISA HAMBLEN HSA Centurion, | ) | |
| BURCH Nurse, Centurion, | ) | |
| CHARTERS Nurse, Centurion, | ) | |
| MAVES ARS, Centurion MAT Program, | ) | |
| NEVERS Nurse, Centurion, | ) | |
| NWANNUNU Dr., Centurion, | ) | |
| KELLY MCCAFFERTY Centurion | ) | |
| Practitioner MAT/MHS, | ) | |
| GOSMAN Centurion Practitioner | ) | |
| MAT/MHS, | ) | |
| KENNEDY Centurion Practitioner | ) | |
| MAT/MHS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING COMPLAINT AND DIRECTING
SEVERANCE OF CLAIMS**

Plaintiff Seth Vilchuck, an inmate at Pendleton Correctional Facility

("Pendleton"), filed this action under 42 U.S.C. § 1983 alleging First Amendment

retaliation and Eighth Amendment deliberate indifference claims against

Defendants. Dkt. 1. Because the plaintiff is a "prisoner," this Court must screen

the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is

frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To

1

determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Mr. Vilchuck has identified the theories he wishes to use— violations of the First Amendment through retaliation and of the Eighth Amendment through deliberate indifference. Where a pro se litigant has expressly stated the legal theory or theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the Court analyzes Mr. Vilchuck's claims only under the theories he has identified.

2

Mr. Vilchuck's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). The complaint names as defendants (1) Pendleton Warden Trent Allen; (2) Health Services Administrator ("HSA") Lisa Hamblen; (3) Nurse Burch; (4) Nurse Charters; (5) Nurse Nevers; (6) Addiction Recovery Services ("ARS") staff member Mrs. Maves; (7) Dr. John Nwannunu; (8) Mental Health Specialist ("MHS") Kelly McCafferty; (9) MHS Mr. Gosman; and (10) MHS Mr. Kennedy.

The overall theme of Mr. Vilchuck's complaint is that all the Defendants retaliate against him in various ways because he is a frequent filer of grievances and federal civil rights cases against them and others at Pendleton. Beyond that, however, there are two distinct allegations of deliberate indifference to serious medical needs, concerning two different needs, and the defendants do not entirely overlap between these claims.

First, Mr. Vilchuck alleges that he is hypoglycemic, but over the course of several months did not receive needed and prescribed glucose tests to monitor his condition. He puts the number of missed tests at approximately 140. He states that this has sometimes caused him to experience very low glucose levels, which can lead to black outs. He accuses Nurses Nevers, Burch, and Charters of personally and frequently not providing him with the needed glucose tests. He also states that he has repeatedly and directly advised HSA Hamblen and Warden Allen of this problem, and neither has taken any action. He also accused Dr. Nwannunu of "allowing his nurses to be negligent" in not providing the glucose tests. Dkt. 1 at 15.

3

Second, Mr. Vilchuck alleges that he suffers from an opioid addiction. He states that he has previously tried to take naltrexone to treat his addiction, but that he is "allergic" to it. *Id.* at 9. He has requested to take Suboxone or methadone as an alternative medication to treat his addition. However, Dr. Nwannunu, Mrs. Mayes, and MHS Kennedy have refused to arrange for any such alternative medication. He further alleges that Mrs. Mayes, MHS Kennedy, MHS McCafferty, and MHS Gosman have been entirely ignoring his requests for any opioid addiction treatment once they learned of Mr. Vilchuck's grievances and civil lawsuits. And, he claims that he has repeatedly and directly advised HSA Hamblen and Warden Allen of the lack of adequate opioid addiction treatment, and neither has taken any action.

Mr. Vilchuck is seeking damages. He also seeks injunctive relief in the form of a transfer to another prison "outside the State of Indiana, within the United States Department of Corrections," for the medical defendants to have their licenses revoked, and that he be provided with Suboxone or methadone. *Id.* at 18-19. Mr. Vilchuck has also filed a motion for counsel, dkt. 10, and a motion for an "emergency transfer" to any other Indiana Department of Correction facility, dkt. 11.

### III. Discussion

The Court concludes there are essentially three sets of claims in Mr. Vilchuck's complaint: (1) that all Defendants retaliate against him; (2) that some (but not all) Defendants have been deliberately indifferent to his serious medical need of hypoglycemia; and (3) that some (but not all) Defendants have been

deliberately indifferent to his serious medical need of opioid addiction. Although there is some overlap as to Claim (1), Claims (2) and (3) belong in different suits. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012) (stating "district court should have rejected [plaintiff's] attempt to sue 20 defendants in a single lawsuit raising claims unique to some but not all of them") (citing *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012)); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Rule 18(a) of the Federal Rules of Civil Procedure provides that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Joinder of the defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). In short, the courts do not allow an inmate to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Moreover, a district court may "sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015) (citing *Gaffney v. Riverboat Servs. of Indiana., Inc.*, 451 F.3d 424 442 (7th Cir. 2006)). To be "discrete and separate . . . one claim must be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal quotation marks omitted). That is the case here. Specifically, any factual issues regarding whether Mr. Vilchuck's alleged hypoglycemia is being adequately treated would be entirely distinct from whether his alleged opioid addiction is being adequately treated.

In this case, the Court will address and screen the claims related to inadequate treatment of Mr. Vilchuck's alleged hypoglycemia. The claims related to inadequate treatment of his alleged opioid addiction will be severed into a new action, if Mr. Vilchuck so chooses, as discussed below.

### A. Hypoglycemia

Mr. Vilchuck's case **shall proceed** with First Amendment retaliation and Eighth Amendment deliberate indifference claims against Warden Allen, Nurse Nevers, Nurse Burch, Nurse Charters, HSA Hamblen, and Dr. Nwannunu, in relation to his claim that he has regularly and frequently not received needed monitoring of his hypoglycemia. The Court notes, however, that to the extent Mr. Vilchuck seeks revocation of any medical provider's state license, the Court cannot provide such relief. *D.A.Y. Investments LLC v. Lake County*, 106 N.E.3d 500, 506 (Ind. Ct. App. 2018) (Under Indiana law, it is a jurisdictional prerequisite for a party to first exhaust administrative remedies prior to seeking

6

judicial review of an agency action.). There is no indication that Mr. Vilchuck has utilized Indiana's administrative procedures to challenge any medical provider's licensure.[1]  So, Mr. Vilchuck will not be allowed to seek revocation of any medical provider's license in this case.

### B. Opioid Addiction Treatment

These claims are misjoined. In such a situation, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. The misjoined claims shall either be severed into new actions or dismissed without prejudice. *See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). The plaintiff is the master of his complaint and shall be given the opportunity to determine which course is followed. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even pro se litigants are masters of their own complaints and may choose who to sue-or not to sue"). If new actions are opened, the plaintiff will be responsible for the filing fee associated with each new case.[2] In addition, the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for each new

---

[1] Also, to the extent Mr. Vilchuck refers in his complaint to fears that he will be subjected to a medically-induced heart attack in order to cover up a conspiracy of retaliation against him, the Court gives no credence to such delusional allegations. See *Ezike v. National R.R. Passenger Corp.*, 2009 WL 247838, 3 (7th Cir. 2009) (stating that "irrational or delusional" allegations in a suit filed *in forma pauperis* should be dismissed).

[2] The Court notes that even if Mr. Vilchuck is granted permission to proceed in a case *in forma pauperis* without requiring payment of an initial partial filing fee, he is still indebted to the Court in the amount of $350 for each newly-opened case.

case. As always, the plaintiff should consider whether to file any particular civil action.

The Court further notes that it is possible that Mr. Vilchuck's claims related to treatment of his opioid addiction are related to a previously-filed case, *Vilchuck v. Manning*, No. 1:25-cv-00021-MPB-MKK (S.D. Ind.). That case alleges that a Pendleton nurse has been both retaliating against Mr. Vilchuck and been deliberately indifferent to his serious medical needs by not providing him with Suboxone to treat his opioid addiction. *See id.* at dkt. 14, p. 2. If Mr. Vilchuck elects to sever his opioid claims in this case into a new action, the Court will need to consider whether it should be consolidated with the *Manning* case.

Mr. Vilchuck shall have through **November 13, 2025**, in which to notify the Court whether he wishes the Court to sever the opioid addiction treatment claims into a new action. If Mr. Vilchuck fails to so notify the Court, these claims will be considered abandoned and will be dismissed without prejudice.

### IV. Motion for Counsel

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th

Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Mr. Vilchuck has contacted multiple attorneys with requests for representation without success. The Court finds he has made reasonable attempts to secure counsel.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the

extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan*, 987 F.3d at 682 (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

The Court granted Mr. Vilchuck's motions to recruit counsel in two other pending cases: *Vilchuck v. Harmon et al.*, 1:24-cv-00601-JPH-TAB, and *Vilchuck v. Hamblen et al.*, 1:24cv-01086-JRS-TAB. It requires significant expenditure of Court resources to identify and appoint recruited counsel. Also, recruitment of counsel in one case for a particular plaintiff does not necessarily mean the Court has found the plaintiff to be "incompetent" or completely unable to litigate—only that assistance for the plaintiff was deemed appropriate in that particular case or cases.  Here, in this case, the Court concludes that Mr. Vilchuck does not require the further assistance of recruited counsel at this time. The Seventh Circuit has found that "until the defendants respond to the complaint, the plaintiff's need for assistance of that counsel . . . cannot be gauged." *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013); *see also Mapes v. Indiana*, 932 F.3d 968, 971 (7th Cir. 2019) (acknowledging "the difficulty in accurately

evaluating the need for counsel in the early stages of pro se litigation"). That statement from *Kadamovas* is not a "bright-line rule," but in this case, Mr. Vilchuck has not shown he needed counsel to assist him to "investigate and flesh out any claim that may exist." *Mapes*, 932 F.3d at 971-72. Mr. Vilchuck is an experienced litigant. Although Mr. Vilchuck complains of various mental problems, that has stopped him from pursing his multiple cases thus far. His motion for counsel, dkt. [10], is **DENIED without prejudice**.

### V. Preliminary Injunction Motion

Mr. Vilchuck's motion for preliminary injunction seeks "emergency facility transfer from PCF to anywhere in the DOC." Dkt. 11.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). The plaintiff bears the burden of proving each element by a preponderance of the evidence. Girl Scouts of *Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

During the course of his multiple lawsuits, Mr. Vilchuck has often requested, then withdrawn, then re-requested the preliminary injunctive relief of transfer to a different prison. Most recently, in *Vilchuck v. Ballenger et al.*, No. 1:24-cv-00141-TWP-MJD (S.D. Ind.), dkt. 99, the Court denied such a motion. In part, this Court concluded that the injunctive relief sought was not sufficiently tied to the claims in the complaint. *Id.* at 5-6. Here, it may be that Mr. Vilchuck's preliminary injunction request is adequately tied to the claims in the complaint. Specifically, he seeks transfer because of alleged ongoing retaliation that has resulted in his missed glucose tests and being denied adequate opioid addiction treatment.

But the Court also repeats the other grounds for the denial of preliminary injunctive relief in *Ballenger*, which apply with equal force here. Where a prisoner should be housed is a matter within the expertise of the IDOC in which this Court is reluctant to interfere, particularly given the limited ability to grant any form of injunctive relief under the Prison Litigation Reform Act. *See* 18 U.S.C. 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage.").

Mr. Vilchuck's allegations of not receiving adequate care for his hypoglycemia, and/or for his opioid addiction, are matters that could be addressed through a different form of injunctive relief – if he shows adequate grounds for being entitled to such relief. His current preliminary injunction motion contains only conclusory, unsworn allegations that he is being deprived

of needed treatment. Thus, he has not currently shown much of a likelihood of prevailing on the merits. Further, balancing the low likelihood of success against the very limited ability for the Court to force the Indiana Department of Correction to move Mr. Vilchuck to a different facility, his current preliminary injunction motion, dkt. [11], must be **DENIED without prejudice**.

### VI. Conclusion

The claims that are proceeding in this action are First Amendment retaliation and Eighth Amendment deliberate indifference claims against Warden Allen, Nurse Nevers, Nurse Burch, Nurse Charters, HSA Hamblen, and Dr. Nwannunu, in relation to his claim that he has regularly and frequently not received needed monitoring of his hypoglycemia.

Mr. Vilchuck shall have through **November 13, 2025**, in which to notify the Court whether he wishes the Court to sever the opioid addiction treatment claims into a new action. If Mr. Vilchuck fails to so notify the Court, these claims will be considered abandoned and will be dismissed without prejudice.

Mr. Vilchuck's motions for counsel and for a preliminary injunction are **DENIED without prejudice**. Dkts. [10], [11].

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Warden Allen, Nurse Nevers, Nurse Burch, Nurse Charters, HSA Hamblen, and Dr. Nwannunu in the manner specified by Rule 4(d). Process shall consist of the complaint filed on June 17, 2025, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Defendants Nurse Nevers, Nurse Burch, Nurse Charters, HSA Hamblen, and Dr. Nwannunu are identified as employees of Centurion. A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

The **clerk is directed** to serve the Indiana Department of Correction and Centurion employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 10/28/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Electronic service to Indiana Department of Correction:
    Warden Trent Allen
    (At Pendleton Correctional Facility)

Electronic service to Centurion
    Nurse Nevers
    Nurse Burch
    Nurse Charters
    Lisa Hamblen
    Dr. John Nwannunu

SETH A. VILCHUCK
149912
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only